# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CLAUDINE RENEE CORTES**<br>213 Summit Trace Road<br>Langhorne, PA 19047<br><br>*Plaintiff,*<br><br>vs.<br><br>**HERSHA HOSPITALITY<br>MANAGEMENT a/k/a HHM**<br>510 Walnut Street, 9th Floor<br>Philadelphia, PA 19106<br><br>*Defendants.* | No. 2:22-cv-05014-KNS<br><br>CIVIL ACTION<br><br>**JURY TRIAL DEMANDED** |

## FIRST AMENDED CIVIL ACTION COMPLAINT[1]

Plaintiff, Claudine Renee Cortes (hereinafter referred to as "Plaintiff"), by and through her undersigned counsel, hereby avers as follows:

## INTRODUCTION

1. Plaintiff has initiated this action to redress violations by Hersha Hospitality Management a/k/a HHM and HHLP Rittenhouse Lessee, LLC *d/b/a* The Rittenhouse Spa & Club (hereinafter referred to as "Defendants") of Section 1981 of the Civil Rights Act of 1866 ("Section 1981" – 42 U.S.C. § 1981), the Crime Victims' Employment Protection Act, Title VII of the Civil Rights Act of 1964 ("Title VII" - 42 U.S.C. §§ 2000e, *et. seq.*), the Pennsylvania Human Relations Act ("PHRA - 43 Pa. C.S. §§ 951 *et. seq.*), and the Philadelphia Fair Practices Ordinance

---

[1] Plaintiff files this First Amended Civil Action Complaint pursuant to F.R.C.P. 15(a)(2) (consent of opposing party). Counsel for Defendants consented to Plaintiff amending her complaint on April 26, 2023.

("PFPO") [2] Plaintiff asserts herein that she was terminated, subjected to a hostile work environment, and retaliated against by Defendant, her previous employer, in violation of these laws and seeks damages as set forth more fully herein.

## JURISDICTION AND VENUE

2. This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in <u>International Shoe Co. v. State of Washington</u>, 326 U.S. 310 (1945) and its progeny.

3. This action is initiated pursuant to federal law(s). The United States District Court for the Eastern District of Pennsylvania has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under laws of the United States. This Court has supplemental jurisdiction over Plaintiff's state-law claims because they arise out of the same common nucleus of operative facts as her federal claims herein.

4. Venue is properly laid in this District pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2), because Defendants reside in and/or conducts business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## PARTIES

5. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

---

[2] Plaintiff's claims under the PHRA and PFPO are referenced herein for notice purposes. She is required to wait 1 full year before initiating a lawsuit pursuant to the PHRA from date of dual-filing with the EEOC. Plaintiff's PHRA, and PFPO claims however will virtually mirror her claims currently filed pursuant to Section 1981.

6. Plaintiff is an adult individual, with an address as set forth in the caption.

7. Defendant, Hersha Hospitality Management a/k/a HHM is a portfolio of hotels across the United States and Canada that represents luxury and lifestyle hotels including the Rittenhouse Hotel where Plaintiff worked.

8. At all times relevant herein, Defendant acted by and through its agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the benefit of Defendant.

## ADMINISTRATIVE REMEDIES

9. The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

10. Plaintiff has satisfied the procedural and administrative requirements for proceeding with an action under Title VII.

11. Plaintiff filed a timely written charge of discrimination with the Equal Employment Opportunity Commission alleging violations of said statute on November 21, 2022.

12. Plaintiff's charge was cross-filed with the Pennsylvania Human Relations Commission.

13. The instant action is timely because it was initiated within ninety ("90") days after the receipt of a Right to Sue letter from the EEOC mailed on or about March 31, 2023.

14. Plaintiff has exhausted federal administrative remedies as to the allegations of the instant Complaint.

## FACTUAL BACKGROUND

15. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

16. Plaintiff is a white (Caucasian) female.

17. Plaintiff was hired to work for Defendant effective on or about March 11, 2022, and in total was employed by Defendant for approximately 8 months.

18. Plaintiff was employed as a full-time Esthetician who was paid by service fees and commissions.

19. Until on or about August 19, 2022, Plaintiff was supervised by Jaleel Britt (*hereinafter* "Britt").

20. Effective on or about October 2, 2022, Plaintiff began being supervised by Robiah Morningstar Murtaza (*hereinafter* "Murtaza").

21. In October 2022, Defendant's prior Director (Lisa Anctil) was replaced by a new Director, Maureen Vipperman (*hereinafter* "Vipperman").

22. Plaintiff's workplace consisted of more than 50% black (African-American) employees, and there was apparent favoritism towards black employees in the workplace and a pro-black/anti-white tolerance.

23. On or about September 26, 2022, Plaintiff was assaulted by a black employee named Mia Murray (*hereinafter* "Murray").

24. In particular, Murray aggressively came at Plaintiff, threatened to hit her for not moving fast enough by saying she would "bop [Plaintiff] upside the head", followed Plaintiff into a hallway, and physically grabbed Plaintiff's hand and twisted and yanked Plaintiff's wrist and thumb, assaulting her.

25. Plaintiff was somewhat loud in telling Murray to get away from her (out of fear) and in calling for someone from security and had previously gone to security in attempt to protect herself and de-escalate the situation[3].

---

[3] Plaintiff was informed by Defendant's management that security was not there to protect her, but instead protect the hotel.

4

26. Plaintiff was so concerned for her safety and shaken to the core, that Plaintiff called the police and initiated a police report and investigation immediately and made it clear she would participate in said investigation and any court-related proceedings if necessary.

27. Anyone being assaulted would have conducted themselves in the same (defensive) manner.

28. To be clear, Plaintiff did nothing wrong and violated no policies in either her engagement with Murray, her defensive response, or her phone call to the police.

29. Upon information and belief, Murray was not terminated for physically assaulting Plaintiff, and instead only given a final warning, despite an alleged zero tolerance policy for assault fighting, or similar acts of violence at Defendants.

30. Shockingly, Plaintiff (the victim) was given a disciplinary warning on or about October 2, 2022 for allegedly being "loud" when calling for security and attempting to protect herself.

31. In giving Plaintiff the discipline, Erin Benbrika (*hereinafter* "Benbrika") Defendant's Human Resources employee, and Murtaza (on her first day of employment) expressly told Plaintiff the discipline was **because Plaintiff called the police**, not just being loud (as Plaintiff had disputed the fairness of such discipline).

32. Benbrika specifically stated to Plaintiff, "we have to write you up because calling the police here is a no-no," which Murtaza agreed and stated "yeah, you called the police and that is crazy."

33. This is direct evidence of discrimination under the Crime Victims' Employment Protection Act.

34. Plaintiff was abruptly terminated approximately 6 weeks later (effective November

5

16, 2022).

35. During that approximate 6-week timeframe, Defendant's management complained or admonished Plaintiff at least 5 different times that she should not have called the police, having police in the facility is bad for business, and other similar statements.

36. This gripe by Defendants' management about Plaintiff calling the police was even raised in very close proximity to Plaintiff's ultimate termination from employment.

37. Plaintiff therefore believes a factor in her termination was the aforesaid "protected activity" of filing a criminal complaint with the police department. *See e.g. Rodgers v. Lorenz*, 25 A.3d 1229, 1232, 2011 Pa. Super. LEXIS 1751 (Pa. Sup. Ct. 2011)(explaining the "Crime Victims' Employment Protection Act" permits a civil action for termination and specified damages due to making a police report for threats or physical violence).

38. Vipperman reinforced a pro-black/anti-white work environment at Defendant.

39. Vipperman laughed at or ignored tremendously inappropriate commentary, language or yelling by black employees.

40. Vipperman hugged new hires if the new hire was black (despite not knowing the person) but did not do this to non-black new employees.

41. Vipperman was very dismissive of Plaintiff or non-black employees in general, typically speaking to non-black employees as if they were annoying.

42. Vipperman would assign Plaintiff less clients as compared to her coworkers, resulting in less commission for Plaintiff, as plaintiff was paid in part on a commission-per-client basis.

43. In addition to Vipperman's direct discrimination and harassment, Plaintiff was also bullied in the workplace by several black employees.

44. Plaintiff was left a voicemail stating she was terminated from her job and people are partying due to her termination, yet this predated Plaintiff's actual termination and was for harassment only.

45. Plaintiff was sent text messages such as: "Yous was locked up in a da crazy looney bin. Straight jacket n all cuz u just a crazy motha fucka!, white traila trash yo cunt wackjob"

46. Another black female was walking around calling people "white bitches" or "spoiled white bitches."

47. Areas of work were smelling like marijuana and black employees were literally coming in high or under the influence and working, yet not disciplined or counseled.

48. Plaintiff heard the "n" word at times from black employees, who were not disciplined or counseled for this language.

49. In Plaintiff's last approximate 2 months of employment, she complained of "racial harassment," "discrimination", or "unfair treatment because she is white" at least 4 times to management.

50. It is clear, a determinative factor in Plaintiff termination was Plaintiff's race and/or complaints of discrimination (in addition to having made a report to the police, as outlined *supra*).

51. The reason for Plaintiff's November 16, 2022 termination was that she purportedly "was not a good fit."

52. When Plaintiff sought further explanation, she was told her termination was because she allegedly stole a client from another coworker which is <u>a verifiably</u> false and pretextual rationale for her termination from employment.

53. Plaintiff was terminated for discriminatory, retaliatory, and unlawful reasons only.

**COUNT I**
**Violations of 42 U.S.C. § 1981**

**(Discrimination, Retaliation & Hostile Work Environment)**

54. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

55. Plaintiff was subjected to a barrage of discriminatory and stereotypical comments, accusations, and discipline while employed by Defendants.

56. These actions are a part of a widespread practice of Defendants which establish a practice of stereotyping and discriminating against white (Caucasian) or non-black employees, including Plaintiff.

57. Plaintiff regularly complained about this discriminatory and retaliatory treatment to Defendants' management (in Plaintiff's last approximate 2 months of employment, she complained of "racial harassment," "discrimination", or "unfair treatment because she is white" at least 4 times to management) but upon information and belief, Defendant's management and Human Resources failed to do any meaningful investigation into Plaintiff's complaints and the discriminatory treatment continued.

58. It is clear, a determinative factor in Plaintiff termination was Plaintiff's race and/or complaints of discrimination (in addition to having made a report to the police, as outlined *supra*).

59. The reason for Plaintiff's November 16, 2022 termination was that she purportedly "was not a good fit."

60. When Plaintiff sought further explanation, she was told her termination was because she allegedly stole a client from another coworker which is <u>a verifiably</u> false and pretextual rationale for her termination from employment.

61. Plaintiff was terminated for discriminatory, retaliatory, and unlawful reasons only.

62. Plaintiff believes and therefore avers that she was terminated, retaliated against, and subjected to a hostile work environment because of her race and/or her objections

to/complaints of race discrimination. These actions as aforesaid constitute unlawful discrimination and retaliation and a hostile work environment under Section 1981.

## COUNT II
**Violations of 18 Pa.C.S.A. § 4957(a) (the "Crime Victims' Employment Protection Act")**
(Wrongful Termination)

63. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

64. Plaintiff was the employee of Defendants and was assaulted by a coworker, Mia Murray.

65. In response to said assault, Plaintiff called the police and initiated a police report and investigation immediately and made it clear to Defendants' management she was reporting a crime and would participate in related court proceedings if necessary.

66. To be clear, Plaintiff did nothing wrong and violated no policies in either her engagement with Murray, her defensive response, or her phone call to the police.

67. Upon information and belief, Murray was not terminated for physically assaulting Plaintiff, and instead only given a final warning, despite an alleged zero tolerance policy for assault fighting, or similar acts of violence at Defendants.

68. Shockingly, Plaintiff (the victim) was given a disciplinary warning for being "loud" when calling for security and attempting to protect herself.

69. In giving Plaintiff the discipline, Murtaza expressly told her the discipline was **because Plaintiff called the police**, not just being loud (as Plaintiff had disputed the fairness of such discipline).

70. This is direct evidence of discrimination under the Crime Victims' Employment Protection Act.

71. Plaintiff was abruptly terminated approximately 6 weeks later (effective November 16, 2022).

72. During that approximate 6-week timeframe, Defendants' management complained or admonished Plaintiff at least 5 different times that she should not have called the police, having police in the facility is bad for business, and other similar statements.

73. This gripe by Defendants' management about Plaintiff calling the police was even raised in very close proximity to Plaintiff's ultimate termination from employment.

74. Plaintiff therefore believes a factor in her termination was the aforesaid "protected activity" of filing a criminal complaint with the police department. *See e.g. Rodgers v. Lorenz*, 25 A.3d 1229, 1232, 2011 Pa. Super. LEXIS 1751 (Pa. Sup. Ct. 2011)(explaining the "Crime Victims' Employment Protection Act" permits a civil action for termination and specified damages due to making a police report for threats or physical violence).

## COUNT III
## Violations of Title VII
### (Discrimination, Retaliation & Hostile Work Environment)

75. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

76. Plaintiff was subjected to a barrage of discriminatory and stereotypical comments, accusations, and discipline while employed by Defendants.

77. These actions are a part of a widespread practice of Defendants which establish a practice of stereotyping and discriminating against white (Caucasian) or non-black employees, including Plaintiff.

78. Plaintiff regularly complained about this discriminatory and retaliatory treatment to Defendants' management (in Plaintiff's last approximate 2 months of employment, she complained of "racial harassment," "discrimination", or "unfair treatment because she is white" at

least 4 times to management) but upon information and belief, Defendant's management and Human Resources failed to do any meaningful investigation into Plaintiff's complaints and the discriminatory treatment continued.

79. It is clear, a determinative factor in Plaintiff termination was Plaintiff's race and/or complaints of discrimination (in addition to having made a report to the police, as outlined supra).

80. The reason for Plaintiff's November 16, 2022 termination was that she purportedly "was not a good fit."

81. When Plaintiff sought further explanation, she was told her termination was because she allegedly stole a client from another coworker which is a verifiably false and pretextual rationale for her termination from employment.

82. Plaintiff was terminated for discriminatory, retaliatory, and unlawful reasons only.

83. Plaintiff believes and therefore avers that she was terminated, retaliated against, and subjected to a hostile work environment because of her race and/or her objections to/complaints of race discrimination. These actions as aforesaid constitute unlawful discrimination and retaliation and a hostile work environment under Title VII.

**WHEREFORE**, Plaintiff prays that this Court enter an order providing that:

A. Defendants are to be prohibited from continuing to maintain their illegal policy, practice, or custom of retaliating against employees and is to be ordered to promulgate an effective policy against such discrimination/retaliation and to adhere thereto (awarding Plaintiff such injunctive and/or equitable relief);

B. Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, bonuses and medical

and other benefits

  C. Plaintiff is to be awarded punitive damages as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

  D. Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to emotional distress/pain and suffering damages - where permitted under applicable law(s)).

  E. Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

  F. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

  G. Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

        Respectfully submitted,

        **KARPF, KARPF & CERUTTI, P.C.**

        */s/ Allison A. Barker*
        Ari R. Karpf, Esq.
        Allison A. Barker, Esq.
        3331 Street Road
        Building 2, Suite 128
        Bensalem, PA 19020
        (215) 639-0801

Dated: April 27, 2023